## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **ZONES LLC AND ZONES PK LIMITED,** <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> **MUHAMMAD YOUSAF,** <br><br> Defendant/Counter-Plaintiff. | **2:24-CV-12773-TGB-APP** <br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS OR STAY DEFENDANT'S COUNTERCLAIMS (ECF NO. 10)** |

This case arises out of an employment relationship that turned sour between Plaintiffs/Counter-Defendants Zones LLC and Zones PK ("Zones" collectively) and Defendant/Counter-Plaintiff Muhammad Yousaf ("Yousaf"), a Michigan resident who used to work for Zones in Pakistan. The parties have been engaged in litigation in Pakistan since 2021. But in late 2024, after Yousaf moved to Michigan and failed to return a Zones-owned laptop, Zones filed a complaint against Yousaf in the Eastern District of Michigan for misappropriation of trade secrets, breach of contract, and conversion. ECF No. 1. Yousaf filed a counterclaim alleging similar claims to those pending in Pakistan, namely breach of contract, breach of fiduciary duty, unjust enrichment, promissory estoppel, accounting, and defamation. ECF No. 4, PageID.56-57. Zones moved to dismiss the counterclaims under Fed. R. of Civ. Proc.

12(b)(6) or to stay the counterclaims under the *Colorado River* abstention doctrine. ECF No. 10, PageID.94.

For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs/Counter-Defendants' Motion to Dismiss. To the extent some claims survive the motion to dismiss, they will be **STAYED**.

## I. BACKGROUND

Zones, LLC is a global information technology solutions provider that is incorporated in the State of Washington. Zones PK (Pvt) Limited is an affiliate of Zones, LLC that is organized under the laws of Pakistan with its principal place of business in Pakistan.[1] Muhammad Yousaf is a Pakistani citizen currently residing in the Eastern District of Michigan who was previously employed by Zones PK from approximately August 1, 2017 to December 19, 2019.

### A. Employment Relationship

On August 1, 2017, Zones and Yousaf entered into a written employment agreement for Yousaf to manage certain operations of Zones PK. *Empl. Agr.*, ECF No. 1-1, PageID.14-16. Yousaf alleges that Zones made additional oral representations by which Zones would make Yousaf a director and shareholder of Zones PK after Zones LLC "took control" of it, and Zones would employ Yousaf for no less than five years or pay him

---

[1] Zones, LLC and Zones PK will be referred to collectively as "Zones" throughout this order unless otherwise specified.

a five-year severance pay should he be terminated. *Countercl.*, ECF No. 4, PageID.51-52, ¶ 18. Yousaf alleges he relied on such promises to leave his then-current employment and work for Zones PK along with bringing his "several hundred employee team" to assist him. *Id.* at ¶ 19. He alleges that throughout his employment, and specifically on February 15, 2019, Zones, through its chairman Firoz Lalji, reiterated the initial promises. *Id.* at ¶ 30. Yousaf alleges he is in possession of writings and emails memorializing such oral representations. *Id.* at ¶ 23.

On or around July 30, 2018, Yousaf was appointed "president" or "Country Manager." *Id.* at ¶ 24. However, Yousaf's employment ended on or around December 19, 2019, before he received the promised shares and directorship. The parties dispute whether Yousaf resigned, was terminated, or otherwise shut out of the operations without a formal notice of termination. But Yousaf complains that he never received the promised severance and that Zones falsely published in a Pakistani newspaper that he was terminated for cause. *Id.* ¶ 70.

### B. Litigation in Pakistan

In early 2021, Yousaf sued Zones, LLC, Zones PK, and Firoz Lalji in the District Court and Wages Court of Islamabad, Pakistan to recover his lost wages and enforce the parties' severance agreement. *Pakistani District Ct. Compl.*, ECF No. 10-2, PageID.126-38; *Pakistani Wages Ct. Compl.*, ECF No. 10-3, PageID.140-50. He raised multiple claims, including breach of contract, failure to fulfil obligations to shareholders,

fraud, and defamation, and sought injunctive relief to restore his previous employment. The suits are still ongoing and well underway: parties conducted extensive discovery and the courts held multiple hearings, including in January 2025.

### C. Litigation in Michigan

Sometime in 2023, Yousaf relocated to Michigan. Zones believed Yousaf took with him the HP laptop that Zones had provided him during his employment as well as other documents allegedly containing "trade secrets" that he was required to return upon his termination. *Compl.*, ECF No. 1, PageID.4, ¶ 16; *Non-Discl. Agr.*, ECF No. 1-2, PageID.18. After Yousaf refused to return that property to Zones, they filed a federal complaint against him on October 20, 2024 for misappropriation of trade secrets, breach of contract, and conversion. ECF No. 1, PageID.7-10.

Yousaf later admitted to having the laptop and returned it to Zones on July 9, 2025. But before he did, Yousaf filed a counter-complaint against Zones LLC and Zones PK alleging breach of contract, breach of fiduciary duty/oppression, unjust enrichment, promissory estoppel, accounting, and defamation. ECF No.4, PageID.56-57. Zones subsequently filed a motion to dismiss Yousaf's counterclaims under Federal Rule of Civil Procedure 12(b)(6) or stay the counterclaims under the *Colorado River* abstention doctrine given the ongoing litigation in Pakistan. ECF No. 10, PageID.94.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss for "failure to state a claim upon which relief can be granted," the Court "must construe the [counter-]complaint in the light most favorable to the [counter-]plaintiff and accept all allegations as true," *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), and determine whether it appears "beyond doubt that the [counter-]plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Ready v. Ford Motor Co.*, 848 F.2d 193 (Table), 1988 WL 41153, at *4 (6th Cir. 1988).

Though this standard is liberal, it requires the counter-plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" to support their grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," that is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted) (requiring that a plaintiff "nudge [their] claims . . . across the lines from conceivable to plausible").

5

"[A]llegation[s] of time or place . . . material when testing the sufficiency of a pleading" under Federal Rule of Civil Procedure 9(f). *Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 944, 948–49 (E.D. Mich. 2021)(Cleland, J.) (citing *Hoover v. Langston Equip. Ass., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). Thus, "a complaint can be dismissed as barred by the applicable statute of limitations under Fed. R. Civ. P. 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975).

### B. *Colorado River* Abstention Doctrine

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). But in certain "extraordinary and narrow exception[s]," courts may use their discretion to abstain from exercising their jurisdiction. *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). One such circumstance exists when a case is concurrently pending in a state court and an "order to the parties to repair to the state court would clearly serve an important countervailing interest,'" *Colo. River*, 424 U.S. at 813, taking into account "considerations of wise judicial administration," including "conservation of judicial resources and comprehensive disposition of litigation," *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (internal quotation and alteration omitted).

"[W]hether Colorado River abstention applies to [federal and] foreign proceedings" as opposed to solely state and federal contemporaneous proceedings "is still an open question" in the Sixth Circuit. *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021). However, the Sixth Circuit noted that, while "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it . . . in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (internal quotations and citations omitted). And the Sixth Circuit has repeatedly applied the *Colorado River* doctrine to evaluate whether a lower court's decision to abstain was proper. *See, e.g.*, *id.* at 469 (applying *Colorado River* factors to determine if abstention was warranted where litigation was pending in a foreign court); *S2 Yachts*, 855 F. App'x at 279 ("The district court accordingly did not err in electing not to abstain from exercising its jurisdiction pursuant to *Colorado River*."); *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557-58 (6th Cir. 2013) (reversing abstention decision in international case because the court did not sufficiently explain how the *Colorado River* factors weighed in favor of abstention).

Courts apply a two-part test to determine whether abstention is appropriate. *S2 Yachts*, 855 F. App'x at 279. First, the actions must be

parallel, and if so, the analysis proceeds to a multi-factor balancing test laid out in *Colorado River*:

> (1) whether the [foreign] court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained[;] (5) whether the source of governing law is [foreign] or federal; (6) the adequacy of the [foreign] court action to protect the federal plaintiff's rights; (7) the relative progress of the [foreign] and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340 (warning that the factors are not a "mechanical checklist" and require a "careful balancing of the important factors as they apply in a given case depending on the particular facts at hand").

"Only the clearest of justifications will warrant dismissal" under the *Colorado River* doctrine. *Colo. River*, 424 U.S. at 819. Further, the Sixth Circuit requires "a stay of proceedings rather than a dismissal in *Colorado River* abstention cases." *Bates v. Van Buren Twp.*, 122 F. App'x 803, 809 (6th Cir. 2004); *see also Grammar, Inc. v. Custom Foam Sys., Ltd.*, 482 F. Supp. 2d 853, 860–61 (E.D. Mich. Mar. 22, 2007)(Feikens, J.) ("I do not see any reason this [stay] remedy should not likewise be applied to abstention in favor of a foreign court.").

## III. DISCUSSION

### A. *Colorado River* Abstention

#### 1. Parallel Proceedings

The threshold question in the *Colorado River* abstention analysis is whether the proceedings are "parallel," in that the "parties are substantially similar" and the claims "are predicated on the same allegations as to the same material facts." *Romine*, 160 F.3d at 340.

After Yousaf left his employment with Zones, he initiated two lawsuits in Pakistan against both Zones LLC and Zones PK in early 2021. A review of the Pakistani complaints and Yousaf's own federal counterclaims suggests the issues are substantially similar, based on the same allegations as to the same material facts and asserted under the same legal theories.

First, there is no dispute that the parties are "substantially the same" as both Counter-Defendants, Zones LLC and Zones PK, are named defendants in the Pakistani suits. *See Pakistani District Ct. Compl.*, ECF No. 10-2, PageID.126; *Pakistani Wages Ct. Compl.*, ECF No. 10-2, PageID.140; *see also Healthcare Co. v. Upward Mobility, Inc.*, 784 Fed. Appx. 390, 395 (6th Cir. 2019) (holding that the fact that "each parties

[are] in both the federal and state proceedings . . . is enough for substantial symmetry").[2]

While Yousaf argues "it is not clear that the Pakistan litigation is actually parallel to Mr. Yousaf's claims" because "Mr. Yousaf's claims in Pakistan deal primarily with unpaid wages and wrongful termination" and "here, Mr. Yousaf brings claims for fraud, unjust enrichment, promissory estoppel, and breach of fiduciary duty," ECF No. 12, PageID.173, Yousaf's federal counterclaim at times reiterates almost verbatim parts of his Pakistani District and Wages Courts complaints. For instance:

- Yousaf describes the terms of the promise in all three complaints. *Compare Countercl.* at ¶ 18, *PK District Ct. Compl.* at ¶¶ 3-4, and *PK Wages Ct. Compl.* at ¶ 7.
- He alleges the oral promise was memorialized in writing in the federal and Wages Court complaints. *Compare Countercl.* at ¶ 23 and *PK Wages Ct. Compl.* at ¶ 6.
- He describes the July 30, 2018 email appointing him as Country Manager in all three complaints. *Compare Countercl.* at ¶ 24, *PK District Ct. Compl.* at ¶ 7, and *PK Wages Ct. Compl.* at ¶ 7.

---

[2] Somewhat mysteriously, Yousaf's counterclaim includes claims against Zones' Chairman and CEO, Firoz Lalji, and a Pakastani Zones affiliate, ZITS, a foreign corporation, which are not parties to this suit. Yousaf has not served those additional parties nor explained how joinder would be proper under Rule 19 or 20 or how this Court could obtain personal jurisdiction over them. Unless and until Lalji and ZITS are properly added to the suit, the Court will not consider them to be parties. In any event, "[e]ven if . . . the state suit includes parties . . . beyond those in the federal suit, . . . such [a] difference[] will not upset an otherwise substantial symmetry between a federal and state action." *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 394 (6th Cir. 2017).

- He highlights Zones' failure to pay the sale consideration to shareholders in the federal and District Court complaints. *Compare Countercl.* at ¶ 29 and *PK District Ct. Compl.* at ¶ 8.
- He takes issue with Zones' use of the Provident Fund in the federal and Wages Court complaints. *Compare Countercl.* at ¶ 32 and *PK Wages Ct. Compl.* at ¶ 20.
- He complains about the false publication in a newspaper in the federal and District Court complaints. *Compare Countercl.* at ¶ 70, *PK District Ct. Compl.* at ¶ 22.

In fact, it appears that all of the allegations in Yousaf's federal counterclaims are also included in the Pakistani complaints, but the Pakistani complaints contain even more allegations against Zones.

Furthermore, while "[p]arallelism does not require identical causes of action in the [concurrent] lawsuits," *Upward Mobility, Inc.*, 784 Fed. Appx. at 394, the legal claims Yousaf brought in federal court are similar to those he brought in the Pakistani courts, namely:

- <u>Breach of contract based on the broken oral promises</u>: Pakistani Complaint ¶ 13; Count 1 of the Counter-Complaint, or in the alternative, Count 3 and 4 for promissory estoppel and unjust enrichment
- <u>Defamation</u>: Pakistani Complaint ¶ 13; Count 6 of the Counter-Complaint
- <u>Fraud</u>: Pakistani Complaint ¶ 14; Count 7 of the Counter-Complaint
- <u>Breach of fiduciary duty to shareholders based on failure to pay sale consideration</u>: Pakistani Complaint ¶ 21 ("Miscommitments relating to shareholding structure and management position"); Count 2 of the Counter-Complaint
- <u>Accounting</u>: request for damages in the Pakistani Courts; Count 5 of the Counter-Complaint

There is no question these are equivalent or identical claims, based on the same story and the same facts. *See Grammar, Inc.*, 482 F. Supp. 2d at 857 (finding federal and Canadian proceedings to be substantially similar where "[t]he principal issue in both actions is the same set of commercial transactions that occurred between the same two parties, and the resolution of the contractual rights and duties in either of the pending cases will likely resolve the issues in the other case").

Nonetheless, Yousaf takes issue with applying the *Colorado River* abstention to Yousaf's *counterclaims* but not to Zones' *original claims*. This argument fails too. First, the issues and claims in Zones' complaint arise from Yousaf's taking of a Zones-owned computer after he left the company, which neither party alleged was raised as part of the Pakistani proceedings. The principal issue in Zones' original complaint is not at issue in the Pakistani proceedings and arises out of the written Employment Agreement, not the oral representations that are at issue in Yousaf's counterclaim. Thus, Zones' complaint and the Pakistani proceedings are not parallel. The Court would not be justified in abstaining from exercising its jurisdiction over those claims.

Second, contrary to Yousaf's assertion, federal courts in this Circuit can and do decide to apply the *Colorado River* doctrine to abstain from *counterclaims* specifically, except when doing so would cause or encourage piecemeal litigation. It is true that the Sixth Circuit in *RSM Richter, Inc.* noted that "abstain[ing] from one half of the parties' dispute

only encourages piecemeal federal and state litigation." 729 F.3d at 557-
58. However, that statement was in the context of requiring the lower
court to explain, applying the eight *Colorado River* factors, why it decided
to abstain from the counterclaims but not the initial claims. The Court
did not hold that it would be error to apply *Colorado River* abstention to
counter claims only. Rather, *Richter* stands for the proposition that the
analysis under *Colorado River* should be just as thorough for counter-
claims, and the fact that only counter-claims are at issue may play a role
when evaluating the propriety of abstention given the risk of piecemeal
litigation, as will be further explored below.

### 2. *Colorado River* Factors

Finding the counterclaims to be "substantially similar" to the
Pakistani proceedings, the Court must determine whether abstaining
from exercising jurisdiction over Yousaf's counterclaims is appropriate by
applying the eight *Colorado River* factors outlined by the Sixth Circuit:

> (1) whether the state court has assumed jurisdiction over any
> res or property; (2) whether the federal forum is less
> convenient to the parties; (3) avoidance of piecemeal
> litigation; (4) the order in which jurisdiction was obtained[;]
> (5) whether the source of governing law is state or federal; (6)
> the adequacy of the state court action to protect the federal
> plaintiff's rights; (7) the relative progress of the state and
> federal proceedings; and (8) the presence or absence of
> concurrent jurisdiction.

13

*See Romine*, 160 F.3d at 340; *see also RSM Richter, Inc.*, 729 F.3d at 557-58 ("[M]ere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain.").

Applying the eight *Colorado River* factors to the counterclaims, the Court finds that abstention is appropriate.

The first factor supports abstention because a court in Pakistan has assumed jurisdiction over the Provident Fund which is at issue in Yousaf's Counter-Complaint.

The second factor—convenience—is neutral and therefore supports jurisdiction. *See Grammar*, 482 F. Supp. 2d at 859 ("Because the presumption is that this Court exercise its jurisdiction, factors that are a wash between the parties effectively act to support this Court's exercise of jurisdiction."). While the Michigan forum appears less convenient because the parties on the original complaint do not have ties outside of the laptop held by Yousaf (which has now been returned to Zones), Zones and Yousaf both chose this forum to bring their own claims.

The third factor—piecemeal litigation—is vigorously disputed and will be addressed below.

The fourth factor supports abstention because the Pakistani suits were filed three years before Yousaf filed a counterclaim in the federal forum and have significantly advanced compared to the federal litigation.

14

The fifth factor supports abstention as there is no federal law at issue in this contract dispute. *See Grammar*, *Inc.*, 482 F. Supp. 2d at 859. Either Pakistani law or the law of Michigan will be applied.

The sixth factor supports abstention: Yousaf's arguments that the Pakistani courts are inadequate because they "failed to expedite the litigation" and are "likely inexperienced with the commercial and international nature of [this] litigation" ring hollow because there have been approximately thirty hearings on the matter in Pakistan and Yousaf chose Pakistan as the forum for his litigation. Moreover, the lack of a guaranteed jury trial is not enough to justify avoiding abstention. *See Grammar, Inc.*, 482 F. Supp. 2d at 860 (holding that Canada not guaranteeing a jury trial as the United States does is not significant in the Court's consideration in exercising jurisdiction).

The seventh factor supports abstention given that the Pakistani litigation has been progressing for over three years, the parties have conducted discovery and there have been over thirty hearings in Pakistan, whereas the parties are still in the pleading stage and only recently started discovery in federal court. *See Bates*, 122 F. App'x at 808 ("We found it significant in *Romine* that the state proceedings were well into discovery, whereas the federal proceedings were still in the initial pleading stage.").

The eighth factor—concurrent jurisdiction—is neutral and therefore supports exercising jurisdiction.

The bulk of the parties' dispute revolves around the third factor—the desire to avoid piecemeal litigation regarding the subject-matter of the case. Yousaf asserts that abstaining only from the counter-claims and not the original claims will lead to piecemeal litigation, as the proceedings would continue in Pakistan and in federal court. *See FSP Stallion 1 v. Luce*, No. 208cv01155, 2009 WL 10693631, at *4 (D. Nev. Oct. 29, 2009) (finding that staying a counterclaim was not justified under *Colorado River* because it would only "remove a handful claims from the federal litigation" and not result in a "final resolution of all disputed issues between the parties").

However, the problem in this case is not that the parties will have to litigate in multiple forums, but rather that the counter-claims are parallel and duplicative of the Pakistani claims, while the original claims are not, as explained earlier. Courts in the Sixth Circuit applying the *Colorado River* doctrine are concerned with the type of piecemeal litigation which "occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and *potentially rendering conflicting results*." *Romine,* 160 F.3d at 341 (emphasis added). Here, the risk of duplicative efforts and conflicting results regarding Yousaf's counter-claims is all the more certain where the foreign courts and this Court may apply different substantive law to each parallel claim. *See also Rubio v. Dell Aquila*, No. 22-CV-00153 (HG) (AYS), 2022 WL 4079581, at *3 (E.D.N.Y. Sep. 6, 2022) ("Given that the Counterclaims in the Federal

16

Action are verbatim copies of the causes of action in the State Action, the federal and state courts would be considering the same issues between the same parties and will likely hear similar pretrial motions, evidence, and witnesses. Allowing such substantially similar actions to proceed in separate courts under the circumstances would invite duplicative efforts and waste judicial resources.").

Thus, while it is true that staying the counter-claims will not resolve the instant federal case and the parties will still have to litigate different claims in different forums, the underlying concern of wasting judicial resources will be best served with the Court abstaining from Yousaf's counter-claims while still undertaking its "virtually unflagging obligation . . . to exercise [its] jurisdiction" as to the original claims. *See Colo. River*, 424 U.S. at 817. Accordingly, this third factor weighs in favor of abstention because exercising jurisdiction over the counter-claims would duplicate judicial effort and almost certainly render conflicting results as to the claims asserted in Pakistan and the counter-claims. *See Grammar*, 482 F. Supp. 2d at 860–61.

Thus, on balance, the Court finds that the *Colorado River* factors warrant abstention, namely the international nature of the suit, the fact that the Pakistani lawsuits are substantially more advanced than this federal suit, and that jurisdiction would increase the risk of duplicative and conflicting outcomes regarding the claims asserted in Pakistan and in the counter-claims.

However, the purposes underlying the *Colorado River* abstention doctrine also include "conservation of judicial resources." *Romine*, 160 F.3d at 339. Here, Zones filed a motion to stay the counter-claims or dismiss the counter-claims under Rule 12(b)(6). The parties and this Court have already spent considerable time and have become familiar with the facts of the case to determine whether to abstain from the counter-claims. To the extent the *Colorado River* doctrine is discretionary and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them," *Colo. River*, 424 U.S. at 817, the Court elects to abstain from adjudicating the counts that state a claim upon which relief can be granted under Rule 12(b)(6) and dismiss those that do not under Rule 12(b)(6).

Deciding whether the counter-claims fail to state a claim upon which relief can be granted under Michigan law—as Zones is asking the Court—would have no effect on Yousaf's claims in the Pakistani litigation. While a stay can be beneficial in that it could "prevent statute of limitations problems," *Bates*, 122 Fed. App'x at 809, a stay of claims that are already time-barred or otherwise improper would do nothing to conserve judicial resources. Instead, a stay of only the claims that pass muster under Rule 12(b)(6) would be "prudent" and better protect judicial resources in this case. The Court notes, however, that while the Sixth Circuit requires staying (rather than dismissing) claims under *Colorado River* abstention, *see id.*, the justification for such a stay may disappear

and require dismissal if the stay is of unusual duration or appears to be an abuse of process.

### B. Rule 12(b)(6) Motion to Dismiss

Thus, for efficiency and completeness purposes, because Zones also moves to dismiss Yousaf's counter-claims for failure to state a claim, the Court will evaluate the sufficiency of Yousaf's pleading under Rule 12(b)(6).

### 1. Count 1: Breach of Contract

To establish a breach of contract claim under Michigan law,[3] a plaintiff must show the existence of a valid contract. *Guess v. St. Martinus Univ.,* 2021 WL 1387784, at *7 (E.D. Mich. Apr. 13, 2021) (Drain, J.) (citation omitted). A plaintiff must then establish the elements of his contract claim, including "(1) the terms of the contract, (2) breach of those terms by the [defendant], and (3) injury to the [plaintiff] resulting from the breach." *Id.*

From Yousaf's "General Allegations," it seemed logical that Yousaf would base his breach of contract claim on the theory that Zones breached

---

[3] While it is surprising that Michigan law would apply to a Pakistani business dispute that arose in Pakistan between parties in Pakistan based on contracts formed under Pakistani law, both parties agree to apply Michigan law at this motion to dismiss stage. *See Anderson v. Franklin*, No. 2:09-CV-11096, 2010 WL 742765, at *7 (E.D. Mich. Feb. 26, 2010)(Murphy, J.) ("Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.") (citation omitted).

their agreement that Yousaf would work for Zones PK and Zones would make Yousaf a shareholder, director, employ him for at least five years, or pay him severance in exchange. *See* ECF No. 4, ¶¶ 18, 23.[4] But surprisingly, that is not what Yousaf based his Breach of Contract claim on. Instead, he alleged in his first count that Zones materially breached an "agreement that . . . Zones PK would be owned and operated for the benefit of its shareholders, including [Yousaf]." *Id*. at ¶ 38.

It is unclear what factual allegations support this breach theory. Is the claim based on Zones' failure to give him shares? Yousaf admits that while he was promised he would become a shareholder, *id*. ¶ 18, he was never *actually* made a shareholder, which negates his explicit theory. Is the claim based on Zones' failure to give the "sale consideration" to the "initial shareholders" as alleged in ¶ 29? Not only is it unclear what this consideration for the initial shareholders was, but it is also unclear whether Yousaf was one of the initial shareholders.

The fact that the Court cannot decipher what allegations support Yousaf's explicit theory of breach demonstrates the insufficiency of the allegations in his counterclaim. Yousaf does not explain *how* Zones breached the alleged duty when it did not "own and operate" Zones "for

---

[4] Such a claim, however, would not be without problems either, including a possible Statute of Frauds issue should Yousaf not be able to show that the oral representations were in fact memorialized in writing. *See* MCL § 566.132(a); *Wilsmann v. Upjohn Co*., 865 F.2d 1269 (Table), 1989 WL 835 at *3-4 (6th Cir. 1989).

the benefit of its shareholders" as intended. The allegations in the complaint are simply too vague to support a claim for breach of contract upon which relief can be granted under Michigan law under this theory. Thus, this Count is **DISMISSED** without prejudice.

### 2. Count 2: Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty under Michigan law, a plaintiff must prove "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Broad-Ocean Techs., LLC v. Lei*, 649 F. Supp. 3d 584, 596 (E.D. Mich. Jan. 9, 2023)(Lawson, J.) (citing *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666 (2020)).

Yousaf alleges that "Zones owed fiduciary duties to [Yousaf] to perform their prescribed duties," including duty to "act in good faith and with ordinary care," and "not to commit improper acts." ECF No. 4, ¶¶ 45-46. Yousaf clarifies that these fiduciary duties are separate from the duties under the alleged contract between Zones and Yousaf.

Michigan allows shareholders to bring an action "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or the shareholder." MCL § 450.1489(1). But there are multiple problems with Yousaf's claim. First, only shareholders can bring such actions. Yousaf admitted he was not a shareholder, but that he was promised an unspecified number of shares. ECF No. 4, ¶ 18. Yousaf argues the Court

should recognize his "equitable interest in the shares fraudulently promised to him," because he would be entitled to a constructive trust containing those shares should he succeed on this claim. *Blachy v. Butcher*, 221 F.3d 896, 903 (6th Cir. 2000) (applying Michigan law) (noting that a constructive trust "may be imposed when property has been obtained through fraud, misrepresentation, concealment, . . . or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property").

In any event, the Michigan statute itself requires the action to be brought "in the circuit court of the county in which the principal place of business or registered office of the corporation is located." MCL § 450.1489(1). Zones LLC is incorporated in the State of Washington and Zones PK is organized under the laws of Pakistan with its principal place of business in Pakistan. None of them have their principal place of business or registered office in Michigan. Thus, this Court is not the appropriate forum for such an action under Michigan law, even if the Court recognized Yousaf's equitable interest in the shares. Therefore, this count is **DISMISSED** with prejudice.

Furthermore, it is unclear from the Counter-Complaint what alleged acts constituted "improper acts" or bad faith or negligence sufficient to support a breach of fiduciary duty claim. Yousaf refers only generally to factual support for this allegation as "set forth above." ECF No. 4, ¶ 47; *see also Peavey v. Black*, 476 Fed. Appx. 697 (11th Cir. 2012)

(unpublished) (noting that "shotgun pleading" is problematic under Rule 8(a) when it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief").

Reading the Counter-Complaint in light most favorable to Yousaf, the following allegations might support a breach of fiduciary claim:

- Zones' alleged failure to "pay the sale consideration to the initial shareholders" after the latter transferred their shares to Zone based on its representations that the initial shareholders would receive the sale consideration subsequently upon acquisition of Zones PK by Zones LLC. ECF No. 4, ¶ 29.
- Zones' alleged improper control over Zones PK's Provident Fund, a trust fund for the benefit of employees. *Id*. at ¶ 32.
- Zones' alleged improper transfer of assets into another entity. *Id*. at ¶ 33.

As to the first allegation, applying the six-year statute of limitations pursuant to MCL § 600.5813, the claim is timely if the acquisition occurred on or after November 12, 2018. While Yousaf does not allege precisely when Zones LLC acquired Zones PK, it appears it did so before July 30, 2018 when Zones made Yousaf "president" or "Country Manager" of Zones PK. *See* ECF No. 4, ¶ 24. Because the acquisition occurred sometime before November 12, 2018, the first allegation is time-barred. The latter two allegations, though undated, may be timely.[5]

---

[5] Because Yousaf complained about the improper control of the Provident Fund in his 2021 Pakistani suits, it is possible the breach occurred after 2018. And Yousaf implies that the transfer of assets occurred after Yousaf was "shut out of information" in 2020. ECF No. 4, ¶ 33.

But even if this claim were not barred by the statute of limitations, this is not the proper forum for such a claim, so this count is **DISMISSED** with prejudice.

### 3. Equitable Claims: Unjust Enrichment (Count 3) and Promissory Estoppel (Count 4)

Zones' basis for dismissing counts 3 and 4 is that a party may not recover under both a breach of contract and equitable relief theory.[6] *See Peyton v. All Am. Recycling, Inc.*, No. 23-CV-11885, 2025 WL 882303, at *8 (E.D. Mich. Mar. 10, 2025)(McMillion, J.) (collecting cases) ("[C]ourts will enforce promises in equity 'only if there is no express contract governing the subject matter of the controversy.'"). Given that the Court dismissed Yousaf's breach of contract claim, that argument is moot at this time, and the equitable claims may proceed.

In any event, the federal rules do allow a party to plead in the alternative where there is a dispute as to the existence or enforceability of a contract. *Id.*; *see also* Fed. R. Civ. Proc. 8; *Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671 (E.D. Mich. May 14, 2012)(Battani, J.) (noting that plaintiffs "can plead their claim for unjust enrichment as an alternative to their claims for breach of contract so long as questions of fact exist as to the existence of a claim based on contract") (citation omitted).

---

[6] Zones' argument that the equitable claims are time-barred under the six-year statute of limitations fails at this stage because Yousaf's claim for promissory estoppel accrued when the alleged promise was broken, which, at the latest, occurred when he was "shut out" of Zones in early 2020.

Here, while there is no dispute a written Employment Agreement exists between the parties, there *is* a dispute as to whether an additional express oral agreement, allegedly memorialized in writing, exists and/or is enforceable under the Statute of Frauds, as Zones questioned. *See Teall v. One W. Bank*, No. 318815, 2015 WL 728562, at *3 (Mich. Ct. App. Feb. 19, 2015) (citing *Thurn v. McAra*, 374 Mich. 22, 24-25 (1964)) ("Unjust enrichment can provide a remedy for plaintiffs whose contracts are considered void under the statute of frauds."); *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 788 (6th Cir. 2016) (allowing plaintiffs to proceed under both breach of contract and unjust enrichment theories at the motion to dismiss stage because of factual dispute as to whether defendant would deny the existence of the contract in further proceedings in the case). Furthermore, because Yousaf did not attach the alleged writing memorializing the oral agreement, the Court cannot "decide as a matter of law at the pleading stage that an express agreement on the same subject matter exists between the parties." *Peyton*, 2025 WL 882303, at *8.

Thus, Zones' motion to dismiss Yousaf's equitable claims is **DENIED**. However, as explained above, these claims will be **STAYED** pending resolution of the Pakistani litigation.

### 4. Count 5: Accounting

"An action for an accounting is equitable in nature, but whether a plaintiff has stated a cause of action for an accounting must be

determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief." *Boyd v. Nelson Credit Ctrs, Inc*, 132 Mich. App. 774, 779 (1984). "An action for accounting is proper . . . if there are circumstances of great complication or difficulty in the way of adequate relief at law." *McDerment v. Biltmore Properties, Inc.*, 2005 WL 3556147 at *10 (6th Cir. 2005) (citing *Basinger v. Provident Life & Accident Ins. Co.*, 67 Mich. App. 1, 9 (1976)). Thus, "[a]n accounting is unnecessary [when] discovery is sufficient to determine the amounts at issue." *Boyd*, at 779; *see also Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility."); *Univ. Pediatricians v. Wilson*, No. 353462, 2021 WL 4228193, at *15 (Mich. Ct. App. Sep. 16, 2021) ("[I]n an action to recover money owing under a contract, plaintiffs needing any discovery about the amount of money in question can subpoena witnesses and avail themselves of discovery rules, making an accounting unnecessary.").

Here, Yousaf only alleges that Zones "failed to account to [Yousaf] for the use of funds for their personal expenditures and regarding the transactions of [Zones] regarding . . . improper use of Zones' PF's funds." ECF No. 4, ¶¶ 65-66. He seeks a "full accounting of all financial transactions of Zones PK within the relevant time period, including as to all related party transactions." *Id.* at ¶ 67.

But Yousaf does not claim—and the allegations do not support an inference—that the transactions at issue are "so complex that ordinary discovery procedures would be inadequate to allow [him] to determine the amounts allegedly owed to [him]." *AKB Wireless, Inc. v. Wireless Toyz Franchise, LLC*, No. 14-13424, 2015 WL 8769964, at *8 (E.D. Mich. Dec. 15, 2015)(Cox, J.). In fact, Yousaf was even able to make a specific amount demand in his Pakistani complaint. *See* ECF No. 10-2, PageID.135, ¶ 21; *see also Boyd*, 132 Mich. App. at 780 (concluding that claim for an accounting was properly dismissed because the plaintiffs had submitted affidavits specifying the amount at issue).

The Court therefore concludes that Yousaf has failed to state a cause of action for an accounting under Michigan law. *Boyd*, 132 Mich. App. at 779-80. This count is hereby **DISMISSED** with prejudice.

### 5. Count 6: Defamation

The parties agree that the statute of limitations under Michigan law for defamation is one year from the publication of the defamatory statement. *Redmond v. Heller*, 332 Mich. App. 415, 432-33 (2020). The only allegation supporting Yousaf's defamation claim is as follows:

> 70.         Plaintiff/Counter-Defendants         defamed Defendant/Counter-Plaintiff by publishing notice in a Pakistani newspaper that Defendant/Counter-Plaintiff was terminated for cause. This was not true and has affected Defendant/Counter-Plaintiff's career.

ECF No. 4, PageID.65.

27

While Yousaf failed to date this allegation, he brought the same defamation claim in the Pakistan litigation in early 2021 (ECF No. 10-2, PageID.136, ¶ 22), suggesting that the statute of limitations for the claim expired years before Yousaf filed his Counter-Complaint.

Furthermore, because Yousaf filed his counterclaims on November 12, 2024, a timely defamatory statement would need to have been made on or after November 12, 2023—that is more than three years after Yousaf was allegedly terminated from Zones PK's operations in early 2020. *Id.* at ¶ 19. Even construing the allegation in favor of Yousaf, it is entirely implausible that a newspaper would publish a notice about Yousaf's termination three years after it happened.

This Count is hereby **DISMISSED** with prejudice.

### 6. Count 7: Fraud

The parties dispute whether the fraud claim meets the heightened pleading standard of Federal Rule of Civil Procedure 9(b). They also dispute whether Yousaf sufficiently alleged that Zones made a promise with "no present intention of fulfilling the promise" under a promissory fraud theory. *See Sheats v. Akzo Coatings, Inc.*, No. 180171, 1997 WL 33353422, at *3 (Mich. Ct. App. Mar. 4, 1997) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 338-39 (1976)) (holding that while "an action for fraud must be predicated upon a statement relating to a past or an existing fact," a plaintiff may bring a claim for promissory

28

fraud "where a defendant makes a promise with fraudulent intent, having no present intention of fulfilling the promise").

In any event, the fraud claim is time barred as pled. The statute of limitations for a fraud claim is six years, MCL § 600.5813, and it begins to run from the time the fraudulent misrepresentation is made, *Future Now Enters. v. Foster*, 860 F. Supp. 2d 420, 428 (E.D. Mich. Mar. 19, 2012)(Lawson, J.). *See also Boyle v. General Motors Corp.*, 468 Mich. 226, 230-32 (2003) (rejecting the argument that a claim for fraud does not begin to accrue until the fraud is or should have been discovered). Zones—through its chairman and senior vice president—made the directorship, shareholder, and severance promises to Yousaf some time in 2017 when Yousaf was in the United States. ECF No. 4, ¶¶ 17-18.

However, this counter-suit was filed at least seven years after the initial promise was made. Nonetheless, "[w]hen a defendant fraudulently conceals the existence of the misrepresentation, the plaintiff may bring an action 'at any time within 2 years after [he] discovers, or should have discovered, the existence of the claim.'" *Foster*, 860 F. Supp. 2d at 428 (citing MCL § 600.5855). While Yousaf does not explicitly allege Zones actively concealed their fraud, he does allege that Zones repeated its promises multiple times throughout Yousaf's employment to induce his continued employment. *See* ECF No. 4, ¶ 30. Yousaf also fails to allege when he discovered the fraud, but the allegations support an inference

that he should have discovered the fraud sometime after Zones LLC acquired Zones PK (likely on or before July 30, 2018) and failed to make him a director or shareholder, or sometime in late 2019 or early 2020 when Yousaf was "shut out" of Zones PK's operations before the end of his five-year term without receiving his severance package. Thus, even reading the Counter-Complaint in the light most favorable to Yousaf and applying the discovery rule to his latest fraud allegations, they are time-barred because they accrued four years before Yousaf filed this counter-suit.

However, one single and narrow allegation saves Yousaf's fraud claim from being time-barred. Yousaf alleges that throughout his tenure as Country Manager (between July 30, 2018 and the end of 2019), "and in order to induce [him] to continue" to work for them, Zones, "directly or through their agents, continued to represent that [he] would receive the package of consideration he was promised, including that he be made a shareholder and director," ECF No. 4, ¶ 20. More specifically, he alleges that on February 15, 2019, in Islamabad, Pakistan, Zones' chairman, Firoz Lalji, confirmed that they "would fulfill all their contractual obligations as agreed upon." *Id.* at ¶ 30. Taken together, these allegations create a plausible claim of fraud based on Lalji's representation in 2019 for inducement to continue working with Zones that is not time-barred.

Nonetheless, Yousaf failed to allege that Zones had "no *present* intention of fulfilling the promise" when it reiterated the promise in 2019.

30

*See Sheats*, 1997 WL 33353422, at *3 (emphasis added). In fact, it is just as possible that Zones still intended to fulfill the promise at that time, but that there was a later breakdown in the working relationship that led Zones to decide not to honor the alleged promises. For instance, Zones seemingly did elevate Yousaf to the position of a director or "president" or "Country Manager" on July 30, 2018, suggesting Zones may have had the intention to fulfill their promises at some point in time. Thus, Yousaf has failed to "nudge [his fraud] claim[ ] . . . across the line[ ] from conceivable to plausible." *Iqbal*, 556 U.S. at 678.

Therefore, the fraud count is **DISMISSED** without prejudice.

## IV. CONCLUSION

Based on the foregoing reasons, Zones' Motion to Dismiss or Stay Yousaf's Counter-Complaint is **GRANTED IN PART** and **DENIED IN PART**.

The following claims are **DISMISSED** with prejudice:

- Count 2: Breach of Fiduciary Duty
- Count 5: Accounting
- Count 6: Defamation

The following claims are **DISMISSED** without prejudice:

- Count 1: Breach of Contract
- Count 7: Fraud

The following claims are **STAYED** pending resolution of the litigation in Pakistan:

- Count 3: Unjust Enrichment

- Count 4: Promissory Estoppel

If Yousaf wishes to file a motion for leave to amend his Breach of Contract or Fraud claims, he must do so within forty-five (45) days. The parties are advised that in the event Yousaf is allowed to amend his Counter-Complaint for Fraud and Breach of Contract, those claims will be stayed as well under the reasoning of this Opinion.

**IT IS FURTHER ORDERED**:

- That on a quarterly basis, commencing on October 1, 2025, and following again on January 1, 2026, April 1, 2026, July 1, 2026, and continuing thereafter on those dates until the resolution of the litigation pending in Pakistan, the parties **SHALL JOINTLY SUBMIT A REPORT** to the Court indicating the status of the Pakistani litigation;

- That the parties **SHALL NOTIFY THE COURT** as soon as they become aware that a resolution of the litigation in Pakistan has been reached and shall indicate whether they wish the stay to be lifted and whether there are any remaining issues for this Court to address concerning Defendant's counter-claims; and,

- That failure to file such quarterly reports or to timely move the Court to lift the stay may result in the dismissal of the counter-claims with prejudice based on Defendant's failure to prosecute his counter-claims and comply with the Court's orders.

**SO ORDERED**.

Dated: September 26, 2025      /s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE