UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ZONES LLC AND ZONES PK LIMITED,** | **2:24-CV-12773-TGB-APP** |
| Plaintiffs/Counter-Defendants, | HON. TERRENCE G. BERG |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART COUNTER-PLAINTIFF'S MOTION TO AMEND (ECF NO. 32)** |
| **MUHAMMAD YOUSAF,** | |
| Defendant/Counter-Plaintiff. | |

On September 26, 2025, the Court granted in part and denied in part Plaintiffs/Counter-Defendants Zones LLC and Zones PK's Motion to Dismiss or Stay Defendant/Counter-Plaintiff Muhammad Yousaf's counterclaims. *See* ECF No. 30. The Court stayed the equitable counterclaims, dismissed other claims with prejudice, and dismissed the counterclaims for Fraud and Breach of Contract without prejudice. *Id.* at PageID.300. The Court further noted that Yousaf could file a motion for leave to amend those latter claims within 45 days of the order. *Id.* at PageID.301. On November 10, 2025, Yousaf filed such a Motion to Amend. ECF No. 32. The Motion is fully briefed. *See* ECF Nos. 34 & 35. Plaintiffs/Counter-Defendants Zones LLC and Zones PK voluntarily dismissed their claims on April 23, 2026. ECF No. 47.

For the reasons that follow, Yousaf's Motion to Amend will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case arises out of an employment relationship that turned sour between Plaintiffs/Counter-Defendants Zones LLC and Zones PK and Defendant/Counter-Plaintiff Muhammad Yousaf ("Yousaf"), a Michigan resident who used to work for Zones in Pakistan. Zones, LLC is a global information technology solutions provider that is incorporated in the State of Washington ("Zones" hereinafter). Zones PK (Pvt) Limited is an affiliate of Zones, LLC that is organized under the laws of Pakistan with its principal place of business in Pakistan ("Zones PK" hereinafter). Yousaf is a Pakistani citizen currently residing in the Eastern District of Michigan who was previously employed by Zones PK from approximately August 1, 2017 to December 19, 2019.

### A. Factual Background

Prior to working for Zones PK, Yousaf was employed at Ovex Technologies. Am. Countercl., ECF No. 32-1, PageID.327, ¶ 11. In early 2017, Zones, through its CEO Firoz Lalji, approached Yousaf to recruit him for Zones' new planned venture in Pakistan. *Id.* at ¶ 12. In a meeting "at the airport" sometime in early 2017, Lalji allegedly asked Yousaf to help Zones incorporate and establish a company in Pakistan, and promised to make Yousaf a shareholder, director, and Country Manager of that company, with a minimum five-year term of employment and a promise of severance equal to his wages for the remaining term if he was let go before the expiration of the five years. *Id.* at ¶¶ 16-19. Relying on

those statements, Yousaf resigned from Ovex and helped establish Zones PK. *Id.* at ¶¶ 20-24. He started receiving compensation for his services starting in March or April 2017. *Id.* at ¶ 24. On August 1, 2017, Zones PK and Yousaf entered into a written employment agreement for Yousaf to manage certain operations of Zones PK. Empl. Agr., ECF No. 1-1, PageID.14-16; Non-Discl. Agr., ECF No. 1-2, PageID.17-24.

Yousaf alleges that throughout his employment, Lalji reiterated the initial promises. For instance, on or around December 11, 2017, Lalji "reaffirmed his commitment to make Mr. Yousaf a shareholder and director, as well as to have Zones PK employ him for at least 5 years or provide guaranteed severance." Am. Countercl., ECF No. 32-1, PageID.327, ¶ 25. On or around July 30, 2018, Yousaf was appointed as "President and GM of Zones PK." *Id.* at ¶ 27-28. However, Yousaf notes that after Zones PK was established, "Zones informed Mr. Yousaf that he could not hold the shares himself because of his connection to Ovex." *Id.* at ¶ 22.

In addition, also on December 11, 2017, Lalji allegedly promised that Zones would pay Yousaf some kind of consideration after Yousaf successfully transferred Zones PK's shares to Zones. *Id.* at ¶ 26 (the "Transfer Share Contract"). Yousaf did so, causing Zones to gain a controlling stake in Zones PK, yet Yousaf alleges he received no compensation for arranging the transfer of the shares. *Id.* at ¶¶ 29-30.

On February 15, 2019, Yousaf alleges that Lalji reaffirmed he would "fulfill all their contractual obligations as agreed." *Id*. at ¶ 31. Relying on Lalji's initial promise and later reaffirmations, Yousaf continued to work hard for Zones PK. *Id*. at ¶ 32. But on December 19, 2019, although he had never become a shareholder or Director as he alleges he was promised, Yousaf was dismissed from his position at Zones PK by Lalji. *Id*. at ¶¶ 32-33. Even then, Yousaf alleges Lalji confirmed he would uphold the promise regarding severance, but Yousaf states he did not receive the promised severance, or any severance at all. *Id*. at ¶¶ 34, 36.

### B. Procedural Background

In early 2021, Yousaf filed two lawsuits in Pakistan against Zones LLC, Zones PK, and Firoz Lalji to recover his lost wages and enforce the parties' severance agreement. Pakistani District Ct. Compl., ECF No. 10-2, PageID.126-38; Pakistani Wages Ct. Compl., ECF No. 10-3, PageID.140-50. The suits are still ongoing and well underway: per the last joint status report, the parties have conducted extensive discovery and the Pakistani courts have held multiple hearings, including one recently on March 28, 2026, and scheduled another one for May 21, 2026. ECF No. 44, PageID.568.

Sometime in 2023, Yousaf relocated to Michigan. Zones believed Yousaf took with him the HP laptop that Zones had provided him during his employment as well as other documents allegedly containing "trade

secrets" that he was required to return upon his termination. Compl., ECF No. 1, PageID.4, ¶ 16; Non-Discl. Agr., ECF No. 1-2, PageID.18. After Yousaf refused to return that property, Zones filed a federal complaint against him on October 20, 2024 for misappropriation of trade secrets, breach of contract, and conversion. ECF No. 1, PageID.7-10.

Yousaf later returned the laptop to Zones on July 9, 2025. But before doing so, Yousaf filed a counter-complaint against Zones LLC and Zones PK alleging breach of contract, breach of fiduciary duty/oppression, unjust enrichment, promissory estoppel, accounting, and defamation. ECF No. 4, PageID.56-57. Zones subsequently filed a motion to dismiss Yousaf's counterclaims under Federal Rule of Civil Procedure 12(b)(6) or stay the counterclaims under the *Colorado River* abstention doctrine due to the ongoing litigation in Pakistan. ECF No. 10, PageID.94. The Court dismissed some claims, stayed others, and gave Yousaf leave to file the instant motion to amend the breach of contract and fraud counterclaims. ECF No. 30. That motion is fully briefed. ECF Nos. 32, 34, & 35. Thereafter, on April 23, 2026, Zones LLC and Zones PK voluntarily dismissed their claims against Yousaf. ECF No. 47.

## II. LEGAL STANDARD

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial may be appropriate, however, "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 644 (6th Cir. 2003) (citations omitted). "If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may deny the motion to amend as futile[.]" *Spigno v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831, 834 (E.D. Mich. Nov. 7, 2014)(Lawson, J.) (citations omitted). A pleading can withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it "contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, like a Rule 12(b)(6) motion, consideration of a Rule 15(a)(2) motion is restricted to the pleadings. *See State ex rel. Murray v. Fid. & Deposit Co. of Maryland*, No. 1:10CV1367, 2012 WL 601917, at *2 (N.D. Ohio Feb. 22, 2012) (declining to consider matters outside the pleadings raised in response to a motion to amend because they are "more appropriately raised at the summary judgment stage").

### III. DISCUSSION

#### A. Breach of Contract

Before Yousaf amended his counterclaims, the Court dismissed without prejudice his breach of contract claim on the basis that it was too vague. In the proposed Amended Counterclaim, Yousaf purports to

clarify the breach of contract claim, which appears to be based on the following alleged *oral* agreements between Yousaf and Zones: Zones would make Yousaf a shareholder or director, ECF No. 32-1, ¶ 45; Zones would employ Yousaf for five years or pay him severance for the remainder of the term, *id.* at ¶ 46; and Zones would pay Yousaf for transferring Zones PK's shares to Zones, *id.* at ¶ 47. Zones and Zones PK argue the breach of contract claim is barred by the statute of frauds, the subsequent written employment agreement, and the indefinite and vague nature of the terms. ECF No. 34.

### 1. Statute of Frauds

Before the proposed amendment, Yousaf claimed the alleged oral agreements were memorialized in writing, but Yousaf removed that allegation in the amended counterclaim, thereby suggesting there is no written agreement supporting the oral promises. But Michigan law provides that "employment agreements which by their terms cannot be performed within one year from their making 'shall be void, unless that agreement ... is in writing and signed by the party to be charged therewith ...'" *Wilsmann v. Upjohn Co.*, 865 F.2d 1269 (Table), 1989 WL 835, at *3 (6th Cir. 1989) (citing Mich. Comp. Laws Ann. § 566.132(a) (Supp. 1988)). Indeed, MCL § 566.132(1)(a) (eff. Mar. 17, 2020) states that "an agreement, contract, or promise" that "by its terms, is not to be performed within 1 year from the making of the agreement" is "void unless that agreement, contract, or promise, or a note or memorandum

of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise." In determining whether the alleged oral agreements come within the statute of frauds, "the proper inquiry is whether the contract is capable of performance within one year of the agreement." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 532 (1991).

As to the alleged agreement made in early 2017 that Zones would employ Yousaf for at least five years, that contract falls within the Statute of Frauds because it clearly imposes an obligation extending more than one year and therefore could not be performed within one year.

Part of that agreement, however, involved the promise that Yousaf would receive severance pay equal to the remaining duration of the 5-year term if he were to be dismissed before its expiration. This contract, depending on the circumstances, could be capable of performance within a year, and therefore it does not fall within the Statute of Frauds. That is because nothing indicates severance was to be paid in installments over the five-year period, and Zones could have paid a lump sum to Yousaf within one year of starting his employment. *Compare J & J Plumbing & Heating v. Tate*, Nos. 277824, 279838, 2008 Mich. App. LEXIS 2181, at *7-8 (Ct. App. Nov. 13, 2008) (holding that an oral provision that "defendants pay $ 60,000 in $ 300 weekly installments," without a requirement for accelerated payment, forced the agreement within the statute of frauds). At the motion-to-dismiss stage, even the

8

futility stage, the counterclaim must be construed in light most favorable to the counter-plaintiff and therefore can be deemed to be performed within one year. However, if more facts come to light showing the alleged guaranteed severance was meant to be paid in installments (such as the email from Zones' global controller Trevor Boyd instructing payroll to continue sending Yousaf his monthly pay until further notice) or in a lump sum at the end of the five years, then that agreement would fall within the Statute of Frauds and would be void unless also in writing.

Finally, as to the remaining oral agreement in early 2017 that Zones would make Yousaf a shareholder or director of Zones PK, and the oral agreement in December 2017 that Zones would pay Yousaf for transferring shares from Zones to Zones PK, the record contains no evidence either way as to whether the performance of such promises could not have been completed within a year of when they were made. Therefore, at this stage, it does not appear that these agreements fall within the Statute of Frauds.

Therefore, Yousaf's breach of contract claim cannot be based on the alleged failure to employ him for five years under the Statute of Frauds. But the other claims of breach of contract do not fall within the Statute of Frauds.

### 2. Subsequent Written Agreement

Zones also assert that the written Employment Agreement entered into between Zones PK and Yousaf on August 1, 2017 supersedes or

9

precludes Yousaf's allegation that there was a prior agreement to pay him guaranteed severance, give him shares, and make him a director. That is because "[i]f parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement." *Omnicom of Michigan v. Giannetti Inv. Co.*, 221 Mich. App. 341, 347 (1997) (citations omitted); *see also Mich. Nat. Bank v. Holland-Dozier-Holland*, 73 Mich. App. 12, 16-17 (1976) (holding it was "error to exclude evidence of the parties' alleged prior and contemporaneous oral understanding" where the "parol evidence was not inconsistent with, and did not contradict, the parties' written agreement").

"[W]here there are several agreements relating to the same subject-matter the intention of the parties must be gleaned from all the agreements." *Culver v. Castro*, 126 Mich. App. 824, 826 (1983) (construing two agreements as part of the same contract). "Extrinsic evidence of prior . . . negotiations is admissible as it bears on this threshold question of whether the written instrument is such an 'integrated' agreement," that is "the parties intended the written instrument to be a complete expression of their agreement as to the matters covered." *Nag Enters. v. All State Indus.*, 407 Mich. 407, 409-11 (1979) (noting the "well-established exception[ ] to the parol evidence

rule" when "the agreement was only 'partially integrated' because essential elements were not reduced to writing"). Thus, if the written Employment Agreement was "completely integrated," there is no breach of the oral agreements, but if it is plausible that the written Employment Agreement was only "partially integrated," then Yousaf could state a claim for breach of the alleged prior oral contract under Rule 12(b)(6).

Here, the parties agree that the Court can consider the written Employment Agreement at this stage, including the Employment Offer and the Propriety Rights, Confidentiality, & Non-Solicitation Agreement. When signing the written Employment Agreement, Yousaf "certifie[d] that neither Zones PK (Private) Limited nor its agents or representatives have made any representations to Employee concerning the terms or effects of this Agreement other than those contained herein." ECF No. 1-2, PageID.23. Zones argues this limiting provision indicates the parties' intent to "nullify" prior negotiations not included in the written instrument. *See UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 494 (1998) ("[W]hen the written agreement includes an explicit merger or integration clause[,] . . . the expressed intention will be effectuated . . . [and] nullify all previous agreements.").

Yousaf responds that the Employment Agreement was with Zones PK, not Zones LLC, and that Zones LLC is the one that made the alleged promises via Lalji before Zones PK existed. ECF No. 32-1, ¶¶ 14-19; *see P.A.L. Envtl. Safety Corp. v. N. Am. Dismantling Corp.*, 2020 U.S. Dist.

LEXIS 92940, *14-15 (E.D. Mich. May 28, 2020) (holding that the parol evidence rule did not bar misrepresentation claim where a contract with a third party stated it superseded all prior negotiations between the parties, not including any third party). But the Non-Solicitation Agreement notes that Zones PK is a subsidiary or affiliate of Zones Inc., and Yousaf's own allegations indicate Firoz Lalji, Zones' CEO, was making promises on behalf of Zones PK *before* it was formed, ¶ 39, and continued to act on behalf of Zones PK *after* it was formed, including:

> 28. Lalji . . . appointed Mr. Yousaf as "President and GM of Zones PK."

> 33. Lalji informed Mr. Yousaf that . . . [he] was dismissed from his position at Zones PK.

Am. Countercl., ECF No. 32-1.

Yousaf further argues that the Employment Agreement is only partially integrated and not complete because the prior oral agreement provided that Yousaf would establish Zones PK, obtain property for the business's operations, and facilitate the transfer of former Ovex employees, none of which is discussed in the subsequent written employment agreement. While these obligations do not contradict the subsequent written agreement, they are not at issue here, and Yousaf himself alleges he received compensation between March and August 2017 for this work that took place before he signed the Employment Agreement.

But Yousaf's amended counterclaims regarding length, terms, conditions, and benefits of employment directly contradict the subsequent written agreement, such that it cannot be said that the Employment Agreement is "partially integrated" as to those claims— though it may be deemed partially integrated as to some compensation, as explained below.

With regard to Yousaf's claim that Zones promised he would be employed for at least five years, the Employment Agreement specifically provided that it was "not meant to imply or constitute an employment agreement for a specific term of employment," that "[t]he Company makes no guarantees as to the length of your employment," and that "[t]he 'at will' nature of your employment relationship with Company cannot be modified or amended in any way, except by a written agreement signed by both you and the Vice President of Human Resources." Thus, any prior promise to the contrary was superseded by the later written agreement.

With regard to Yousaf's claim that Lalji promised he would become a Director of Zones PK, the Employment Agreement provides that "[t]he Company makes no guarantees as to . . . the terms and conditions of your employment." Yousaf was well-aware that he was being hired as an employee, not as a Director, on August 1, 2017 pursuant to the terms of the written agreement.

With regard to Yousaf's claim that Lalji promised him guaranteed severance for five years, the Agreement refers employees "to the enclosed Benefits Summary for additional information on Company's benefits and policies." ECF No. 1-1, PageID.15. The parties have not submitted a copy of the Benefits Summary at this stage, but in the written agreement, Zones explicitly "reserve[d] the right to amend, suspend, or terminate any employee benefit plans and employee cost contribution levels at any time and for any reason with or without prior notice," *id.*, making the *guarantee* of a five-year severance implausible.

Thus, any alleged oral agreement regarding a five-year term of employment, guaranteed severance, and directorship is barred under the parol evidence rule because it directly contradicts the later written agreement containing an clause nullifying prior understandings.

However, with regard to Yousaf's claim that he would become a shareholder in Zones PK, the Agreement explicitly provides for a monthly salary and also mentions the possibility of "bonuses and any other form of compensation." *Id.* at PageID.14. Therefore, the written agreement left the door open for additional compensation in the form of shares. When considering the facts in the light most favorable to Yousaf, it is plausible that a material portion of the employment contract, namely additional compensation in the form of shares, is not contained in the final employment contract. This finding permits prior or contemporaneous agreements to be admitted to supplement the

14

employment contract regarding the alleged promised shares as part of a compensation package without contradicting any express term of the agreement.

Finally, the Transfer Share Contract allegation is not barred by the parol evidence rule because that agreement to transfer shares was made in December 2017, *subsequent* to the written Employment Agreement signed on August 1, 2017.

### 3. Vagueness

Therefore, only two allegations survive Counter-Defendants' challenge on Statute of Frauds and Parol Evidence grounds: the allegations (1) that Yousaf would receive shares and become a shareholder, and (2) that Yousaf would receive "consideration" for transferring shares from Zones PK to Zones LLC.

Counter-Defendants further challenge that the breach of contract allegations are "vague and non-specific." ECF No. 34. Under common law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Geosynfuels, LLC v. Gorman*, 493 Fed. App'x 713, 717 (6th Cir. 2012).

As to the alleged agreement that Yousaf would become a shareholder, Yousaf does not state how many shares he was supposed to receive under the agreement. *See id.* (finding that a stock subscription agreement was insufficient to demonstrate assent "because the document

15

did not contain necessary terms (that is, the number of shares and the price of those shares) of the contract"). Therefore, as pleaded, the terms of the agreement that was allegedly breached are too vague to state a claim upon which relief can be granted.

As to the Share Transfer Contract, Yousaf also failed to allege what "consideration" or "compensation" he believes he is entitled to, beyond his regular salary, for transferring Zones PK's shares to Zones LLC. *See* ECF No. 32-1, ¶¶ 26, 29, 30. It is not clear why Yousaf would be entitled to additional compensation if the shares were not his to begin with, and he was the one with authority to transfer the shares from one entity to another as part of his employment with Zones PK as "President" or "Country Manager." But to the extent compensation may be customary for effectuating such transfers, his damages may be determined with more facts and this allegation may survive a vagueness challenge.

Therefore, Yousaf's proposed amendments to his breach of contract claim are denied as futile, except for the allegation that he was not given "consideration" for transferring shares from Zones PK to Zones LLC. ECF No. 32-1, ¶¶ 26, 29, 30.

### B. Fraud in the Inducement

As this Court already ruled, claims based on the alleged 2017 misrepresentations are time barred on their face, leaving only Yousaf's proposed amended fraud allegations at ¶¶ 31 and 65 that "Lalji reaffirmed to Yousaf in front of witnesses in Islamabad on February 15,

16

2019, that he (Lalji) would fulfill all their contractual obligations as agreed." Am. Countercl., ECF No. 32-1, ¶ 31.

Zones argues that the "reaffirmation" is too vague to support a fraud claim, which must be pled with specificity. Read in the light most favorable to Yousaf, such promises were first represented in 2017, and included that "he would become a shareholder and director of Zones PK and would be employed for at least five years, with guaranteed severance." *Id.* at ¶¶ 64-65. But these promises are lacking in specificity: how many shares of Zones PK stock was Yousaf to receive? What pay or other terms of employment applied to the five-year promise of employment or the related severance package? Moreover, the circumstances surrounding the making of these promises are not described with particularity either: it is broadly alleged they were made in early 2017 during a meeting "in the United States," *id.* at ¶ 14, and later "at the airport," *id.* at ¶ 16. It is unhelpful to allege merely that Lalji reaffirmed such undefined promises made two years prior "as agreed," *id.* at ¶ 31, without specifically stating what the commitments were.

Furthermore, Yousaf fails to argue reasonable reliance on such "reaffirmed" promises in February 2019. Yousaf's sole factual allegation of reliance is that he reasonably relied on Zones' representations by continuing to work at the company until he was dismissed in December 2019. *Id.* at ¶ 69. But by that time, Yousaf had entered an Employment Agreement with Zones PK and was receiving compensation and benefits

17

for his work. By February 2019, Yousaf also knew there were some obstacles to making him a shareholder. *Id.* at ¶ 22. And he does not allege foregoing any benefit in reliance on the "reaffirmed" promises beyond that of initially leaving his prior employment when he received the initial promise in February 2017 that is time-barred.

Finally, just as in his initial counterclaims, Yousaf once again failed to allege that Zones had "no present intention of fulfilling the promise" when it reiterated the promise in 2019. *See Sheats v. Akzo Coatings, Inc.*, No. 180171, 1997 WL 33353422, at *3 (Mich. Ct. App. Mar. 4, 1997) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 338-39 (1976)) (holding that while "an action for fraud must be predicated upon a statement relating to a past or an existing fact," a plaintiff may bring a claim for promissory fraud "where a defendant makes a promise with fraudulent intent, having no present intention of fulfilling the promise"). Yousaf includes conclusory allegations that "Zones had no intention to honor the promises made to Mr. Yousaf" and "intended from the start to sideline Mr. Yousaf and vest full control of Zones PK in Zones." ECF No. 32-1, ¶¶ 71-72. He alleges so on the ground that he never received any shares, which he believes evidences Zones' intention to prevent Yousaf from gaining any interest in the company. *Id.* at ¶ 72.

Besides not being specific enough—when and how many shares were supposed to be distributed?—this reasoning is quite circular. A plaintiff cannot establish fraud in the inducement where, as alleged here,

18

"[the opposing] party simply failed to uphold its side of the bargain" in a contractual relationship. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008). To hold otherwise would "turn[ ] every breach-of-contract claim into a claim for fraud in the inducement, because every party enters into an agreement with the expectation that all parties will abide by the agreement's terms." *Id*. That Yousaf was dismissed before he was made a shareholder or director suggests a breach of the promise, but not necessarily an intent to never fulfil said promise. In fact, as to the alleged guaranteed severance promise, Zones could not fulfil the promise until Yousaf's employment was terminated, and Yousaf did not plead facts suggesting Zones never intended to provide such severance. Moreover, Zones did elevate Yousaf to the position of "Country Manager" on July 30, 2018, ECF No. 32-1, ¶ 28, which was one of the alleged initial promises. *See id*. at ¶ 39. Therefore, Yousaf's proposed amendment still fails to adequately allege any facts to support that Zones plausibly had "no present intention of fulfilling [its 2019] promise," rather than a simple breakdown in the working relationship that led Zones to decide to breach the alleged promises after they were made in good faith.

As a result, Yousaf has once again failed to state a claim of fraud upon which relief can be granted, and it would be futile to amend the fraud allegation.

19

## IV. CONCLUSION

Based on the foregoing reasons, Counter-Plaintiff/Defendant Yousaf's Motion to Amend his Counterclaim (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART**. Only the allegations relating to the "Share Transfer Contract" in ¶¶ 26, 29, 30 of the Amended Countercomplaint survive, in addition to the previously stayed claims of Unjust Enrichment and Promissory Estoppel. It is **FURTHER ORDERED** that all the counterclaims shall remain **STAYED** pending further order of this Court.

**SO ORDERED.**

Dated: June 1, 2026 /s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

20